IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00434-MSK-CBS

UNION OIL COMPANY OF CALIFORNIA,

        Plaintiff,

v.

PAMELA REIGER, Area supervisor, Lakewood Compliance Division,
  for the Minerals Management Service of the U.S. Department of the Interior,
PHILLIP SYKORA, Program Director, Onshore Compliance and Asset Management,
  for the Minerals Management Service of the U. S. Department of the Interior, and
GALE NORTON, Secretary of the U.S. Department of the Interior,

        Defendants.

_____

## OPINION AND ORDER AFFIRMING AGENCY ACTION
_____

      **THIS MATTER** comes before the Court for resolution of the merits of this

administrative agency appeal based on the parties' briefs (**# 29, 34, 35**).

## FACTS

      Plaintiff Union Oil Company of California ("Union") is a lessee under leases to produce

natural gas on lands held in trust by the U.S. Department of the Interior for the benefit of the

Navajo nation. The Department of the Interior's Minerals Management Service ("MMS") is

responsible for calculating and assessing the royalties owed by Union and other lessees. In an

effort to ensure that the Navajo nation receives maximum value for the resources extracted from

its lands, MMS requires lessees to pay royalties on the greater of either the market value of

unprocessed raw gas (sometimes called "wet gas"), as if it were sold to a refiner at the

production site, or the net market value of the various finished products produced from refining that gas. To do so, lessees are required to engage in "dual accounting" (sometimes called "accounting for comparison"), reporting to MMS both the value of raw gas sold at the wellhead and the market value of that finished gas. 30 C.F.R. § 206.155(b)[1] (providing that leases on Indian lands use "accounting for comparison"); AR 106 (lease requiring that "royalty will be computed on the value of gas . . . or on the products thereof, whichever is greater").

The regulatory scheme provides extensive explanation for how the value of both raw and refined gas is calculated. Raw gas is valued according to the terms of 30 C.F.R. § 206.152. Although subject to a variety of conditions and caveats, raw gas is generally valued as "the gross proceeds accruing to the lessee" from the sale to a refiner.[2] 30 C.F.R. § 206.152(b)(1)(i). The value of refined gas is defined in 30 C.F.R. § 206.153. In general, refined gas is valued at "the combined value of the residue gas and all gas plant products . . . less applicable transportation allowances and processing allowances." 30 C.F.R. § 206.153(a)(2). In other words, a lessee pays royalties on the greater of the gross value of raw gas, or the net value (*i.e.* less allowances) of refined gas. Lessees file monthly royalty reports on a document designated as Form MMS-2014 (hereafter "Form 2014"). When the lessee includes a transportation or processing

---

[1]The parties agree that the regulatory scheme has changed since the events at issue here, and both sides agree that the Court should apply the terms of the regulations as they existed at the time. Those regulations are found as an appendix to Union's brief, and the citations in this Opinion uniformly refer to the historical regulatory text.

[2]The regulatory scheme affords differing valuation methodologies depending on whether the lessee's sale to the refiner is at arm's-length or not. The IBLA decision in this case indicates that Union's sales were at arm's-length.

allowance[3] in its calculation of royalties, the Form 2014 must be accompanied by other forms (hereafter "allowance forms") setting forth details of the allowances claimed. 30 C.F.R. § 206.159(a), (c)(1).

In 1999, MMS audited Union's royalty obligations for the years 1993 through 1996. During that period, Union had sold the gas in raw form to refiners. Notwithstanding the requirement that Union engage in dual accounting, during this period Union accounted only for the sale price of that raw gas on its royalty reporting forms. Because raw gas valuation is not generally subject to allowances, Union claimed no allowances on its Form 2014s, and accordingly, did not file any allowance forms. Upon being advised by MMS that it was required to also report the value of the refined gas, Union then recalculated the value of products produced from its raw gas, subtracted the various allowances permitted, and concluded that the net value of the finished gas was less than the gross value of the raw gas – in other words, that it owed no additional royalty.

MMS disallowed Union's allowances on the grounds that Union had not timely filed allowance forms at the time it filed its Form 2014s. *See* 30 C.F.R. § 206.159(c)(1) (allowance forms must be filed within same month as Form 2014). Disallowance of the costs resulted in the value of the finished products exceeding the value of the raw gas on which Union had paid royalties. As a result, by Order dated January 12, 2000, MMS concluded that Union owed

---

[3]For purposes of this Order, there is no need to differentiate between "processing allowances" and "transportation allowances," and the Court may use either term, or simply the term "allowances," to refer collectively to both types of allowance. Similarly, the Court may cite to a regulation governing the procedure by which one type of allowance is claimed, and the reader may assume that a similar regulatory provision sets forth a similar procedure with regard to the other type of allowance.

additional royalty payments for the period at issue.[4]

Union appealed MMS's decision to the Interior Board of Land Appeals ("IBLA"). By Order dated December 28, 2005, the IBLA affirmed the MMS's decision. Union then timely commenced this action, seeking judicial review of the IBLA's determination under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 *et seq.*

Union contends that the IBLA's decision was arbitrary and capricious because: (i) MMS incorrectly interpreted the lease terms and its own regulations, which do not specifically require the filing of forms in order to claim transportation and processing allowances; (ii) the IBLA relied upon a prior decision, *Alexander Energy Corp.*, 153 IBLA 238 (2000), which was inapposite to question of whether filing of the forms was required in order to claim an allowance; (iii) MMS's position is contrary to the implicit statements in its 1992 "Dear Payor" letter to Union; (iv) the MMS is rewriting its regulations in the guise of interpretation; and (v) MMS did not give "fair warning" of its interpretation of the regulations. The parties have filed the administrative record (**# 26, 27**) and briefs as to the merits (**# 29, 34, 35**), and the case is now ripe for consideration.

<u>**ANALYSIS**</u>

**A. Standard of review**

The APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The Court is required to review the entire record

---

[4]The amount of unpaid royalties is not specified in the record. In the administrative proceedings, the MMS used a handful of "sample months" to establish that royalties payable on the refined gas value would exceed those actually paid by Union, but the MMS did not reach a final figure of royalties actually owed. Union's brief suggests that the amount of additional royalties at issue exceeds $ 200,000.

of proceedings before the agency and to set aside the agency's action if it finds that action to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In conducting a review for arbitrary and capricious action, this Court is required to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made. *Citizen's Committee to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008). An agency's decision can be arbitrary and capricious where the agency failed to base its decision on consideration of the relevant factors or where there has been a clear error of judgment on the agency's part. *Wilderness Workshop v. U.S. Bureau of Land Management*, 531 F.3d 1220, 1224 (10th Cir. 2008). A presumption of validity attaches to the agency's decision, and thus, the party challenging the agency's action bears the burden of proof. *Citizen's Committee*, 513 F.3d at 1176.

### B. Union's entitlement to allowances

Union's first argument is that the terms of the lease and the regulatory framework did not require it to file cost allowance forms before being permitted to deduct processing costs. On its face, this argument is patently incorrect. The regulations concerning allowances expressly require the filing of allowance forms at the same time a lessee files a Form 2014. 30 C.F.R. § 106.159(c)(i) ("the lessee shall submit [the allowance form] prior to the time, or at the same time as, the processing allowance . . . is reported on [Form 2014]").

In order to avoid the obvious conclusion that allowance forms must be filed at the same time as a Form 2014, Union contends that it could not do so. It offers the following syllogism: (a) allowances are only allowed with regard to costs actually incurred by the lessee, *see* 30 C.F.R. § 206.159(a)(1)(i); (b) as a lessee and seller of raw gas, Union did not incur any

transportation or production costs; (c) therefore, when filing its Form 2014s, which reflected only the raw gas value, Union was not obligated to file allowance forms.

Although this argument addresses the timing of the filing of allowance forms, it inconsistent with Union's ultimate position in this litigation – *i.e.* that it is entitled to claim allowances when valuing the finished gas. Union is correct that, under a strict interpretation of the regulations, allowances are only permitted for costs actually incurred by the lessee itself. *See e.g.* 30 C.F.R. § 206.159(a)(1)(i) ("the processing allowance shall be the reasonable actual costs underlying <u>incurred by the lessee</u> for processing the gas") (emphasis added). And, Union is also correct that as a producer who sold all of its raw gas to third parties for refining, it did not incur processing or transportation costs that would give rise to an allowance. But when it calculated the value of the refined gas, Union claimed an allowance for transportation and production costs - an allowance to which it was not entitled because the costs were not <u>incurred by it, but instead by third parties</u>. Thus, the argument presented here – that Union was not required to file allowance forms at the time it filed its Form 2014s because it was not entitled to claim any allowance is inconsistent with its ultimate argument that it was later entitled to claim allowances.[5]

Union rationalizes this inconsistent position by pointing to the fact that its Form 2014s only accounted for the value of the raw gas, for which no allowance would be appropriate in any event. But this argument springs from the fact that, by accounting only for the value of the raw

[5]The parties appear to assume that, had Union made a timely claim for allowances for costs incurred by third parties, those allowances would have been allowed. Thus, the Court assumes that the actual practice regarding allowances differs from what the regulations appear to permit. This is not a deviance that warrants affording relief to Union; indeed, Union's entire claim is premised on the fact that it is entitled to claim the benefits of this deviant practice – an allowance for costs incurred by third parties to reduce the value of the finished gas.

gas in the Form 2014s, Union was in violation of both the regulations and the lease terms, both of which required it to engage in dual accounting. Had Union complied with its obligations at the time, its Form 2014s would have reflected the fact that the gross value of the refined gas exceeded the gross value of the raw gas, but that available allowances reduced the net value of the finished gas below the value of the raw gas.[6] And because Union would be addressing the issue of allowances in the Form 2014, it would have timely filed the appropriate allowance forms along with the Form 2014. In other words, Union's failure to timely file the allowance forms along with its Form 2014s is a failure that resulted from Union's disregard of its obligation to properly engage in dual accounting, not from some defect in the regulatory scheme.[7]

On this point, Union makes a final argument: that even if it erred in failing to file allowance forms with its Form 2014s, the regulations do not permit the MMS to disallow late-filed allowances as a sanction for untimeliness. The Court rejects this argument, insofar as it does not necessarily view the denial of allowances as a punitive measure. As reflected in its

---

[6]Union argues that the structure of the Form 2014 makes it impossible to claim production allowances when the royalty value will ultimately be calculated on the raw gas value. Whether that is true or not – and the Court, not being familiar with industry and regulatory customs and practices concerning the Form 2014 – the issue is whether the regulations and lease terms justify the MMS's position in this case. If the law permits that conclusion, the fact that the MMS's forms are inadequate or poorly designed to carry out the regulatory scheme is not a defect that can be remedied by this Court.

[7]Ultimately, Union's logic is circular. It contends that it did not have to reference allowances on its Form 2014s because its raw gas cost was greater the finished gas cost. But the raw gas cost exceeded the finished gas cost only because Union deducted a production allowance from the finished gas cost. In doing so, it gave itself the benefit of an allowance without undertaking the filings required to obtain that allowance. Much as math teachers require students to "show your work" in order to ensure that the student is not hiding unwarranted assumptions in a finished calculation, had Union explicated the basis upon which it had concluded that its raw gas costs exceeded the finished gas cost minus allowances, this dispute would never have arisen.

name, an allowance is a supplemental benefit that a party can, but is not required to, claim.  In

this case, the timely filing of the allowance forms was a condition precedent to Union taking the

allowance.  By failing to comply with the condition precedent, Union lost the ability to claim the

benefit, much as a shopper who forgets to tender a grocery coupon to the cashier until after the

coupon has expired loses the benefit of the coupon's discount.  Construing the regulations to

express a condition precedent, rather than a punitive sanction, the Court finds that MMS's

refusal to grant Union an untimely-claimed allowance is not a sanction exceeding the powers

conferred by the regulations.[8]

The Court acknowledges Union's view that the result here is illogical.  Union is correct

that, if it had properly accounted for the value of the finished gas and timely filed its allowance

forms, the allowance would have reduced the value of that gas below the raw gas value and

Union would have no additional royalty obligations.  But simply observing that following the

law would have resulted in no adverse consequences adds nothing to the analysis.  The fact is,

Union <u>did not</u> properly account for the value of the finished gas.  The natural result of that

failure to carry out its legal obligations is that Union is in a worse position than it would have

been in had it acted properly.  There is nothing inherently illogical in such an outcome.

Union offers several additional lines of argument that the Court will briefly address.  The

first contends that the IBLA's reliance on the *Alexander* case was misplaced.  As the discussion

above explains, the MMS's position is justified on the strength of the regulatory and lease

---

[8]Even assuming that the disallowance is indeed a sanction, *see Alexander, infra.*, the Court would nevertheless conclude that MMS's power to impose the sanction is reasonably inferred from the regulatory scheme.  30 C.F.R. § 206.159(c)(1) specifies deadlines for the filing of allowance forms, and the necessarily implication of a deadline is that the failure to comply with it may warrant disallowance of the untimely action.

language alone, and reliance on IBLA precedent is not necessary to resolve this issue. However, the Court would nevertheless find that the IBLA's reliance on *Alexander* was appropriate. The facts of *Alexander* are squarely on point with those here:

> Alexander argues that it did not apply dual accounting to the royalty calculations on its Indian leases because it sold unprocessed gas only from those leases and thus had no comparable market figures for the sale of processed gas. When Alexander was required, pursuant to the MMS audit, to calculate royalties based on the comparative prices of processed and unprocessed gas, it sought a gas processing allowance, which MMS denied for failure to timely file the requisite [allowance form].

*Alexander Energy Corp*, 153 IBLA 238, 2000 WL 1754109 (I.B.L.A. 2000). When Alexander argued "that it should be allowed to deduct a gas processing allowance in computing the value of processed gas under dual accounting, undertaken pursuant to an MMS audit and demand for additional royalties," the IBLA disagreed, finding that the duty to engage in dual accounting and the duty to timely file allowance forms was clear. As the IBLA explained, "Late reporting or failure to report elicits sanctions: the lessee is subject to the forfeiture of processing allowances." *Id.*

Union argues that *Alexander* did not address Union's argument here that "the MMS's regulations did not require the forms to be filed." That Court does not necessarily agree. Union's argument that the regulatory scheme did not require it, as a seller of raw gas, to file allowance forms for costs incurred by others in refining the gas, appears to differ only semantically from Alexander's argument that "it had sold only unprocessed gas at arm's-length contracts and had no royalty obligations from processed gas sales." *Id.* But even assuming that Union is correct that it has raised a unique argument in this instance, the fact that Union tried a

different approach, offering an argument that persuaded neither the IBLA nor this Court, does not render the IBLA's consideration factually-apposite *Alexander* improper.

Union also argues that the MMS's position here is inconsistent with the terms of a 1992 "Dear Payor" letter it sent to lessees. The Dear Payor letter, AR 121-23, explains that "information necessary for royalty payors to comply with their lease terms and/or regulation requirements regarding dual accounting is not readily available in all cases." It noted that in many arm's-length transactions, sellers of raw gas are "unable to obtain the appropriate information" necessary to calculate the net value of the final products. To remedy this problem, the "Dear Payor" letter explains "a theoretical method of dual accounting that can be used to approximate the value of gas after processing."[9] This "theoretical accounting method" simply allowed lessees to rely on various published information about plant efficiencies, production tables, transportation tariffs, and so on to approximate the proceeds and expenses that refiners would experience. The "Dear Payor" letter ends with a reminder that "when the value of the processed gas . . . is higher than the value of the unprocessed gas, the requirements to submit appropriate allowance forms prior to claiming transportation and/or processing allowances must be met."

Union argues that the "Dear Payor" letter "clearly limits the filing of allowance forms to the situation where the lessee is reporting a processed gas value" for royalty calculations, and

---

[9]Union argues that the MMS "admits that its regulations do not explicitly state that they apply in the theoretical dual accounting context." The Court sees no reason to differentiate between "theoretical dual accounting" and ordinary "dual accounting" for regulatory purposes. The notion of "theoretical dual accounting" simply authorizes lessees to support their dual accounting calculations with approximate cost and revenue figures when actual figures are not available. It does not meaningfully modify the regulatory requirement that lessees engage in dual accounting.

that "the only logical interpretation" of the letter is that "the lessee need <u>not</u> file such forms if the value of the unprocessed gas is higher." (Emphasis in original.) Without necessarily adopting Union's conclusion, the Court finds that the argument springs from a misinterpretation of the term "value." Union appears to conclude that "value of the processed gas" means "net value" – that is, the value of the finished gas after allowances have been taken. Such a reading is entirely circular: a net value of the finished gas can only be calculated one allowance forms have been filed (thereby obtaining the right to claim the allowance); without filing the forms – and thus, without obtaining a right to claim an allowance – one cannot determine what the net value of the gas is.

When the phrase "value of the processed gas" is more appropriately read to mean "gross value of the processed gas," the explanation in the "Dear Payor" letter offers an entirely reasonable method for calculating royalties: the lessee first compares the gross values of the raw and finished gas. If the raw gas is worth more than the gross value of the finished gas, the issue of allowances is moot and the lessee simply pays the royalty on the raw gas. If, as is the situation here, the gross value of the finished gas exceeds the value of the raw gas, the lessee must take the additional step of reducing the value of the finished gas by the appropriate allowances. In order to take those allowances, the lessee must file the appropriate allowance forms along with the Form 2014. Such a filing tells the MMS "although the gross value of the finished gas was more expensive than the value of the raw gas, once deductible production costs shown here are factored in, the value of the raw gas is higher, and I am paying royalties on the raw gas value." This is the position urged by the MMS here and it is entirely consistent with the only reasonable reading of the "Dear Payor" letter.

Finally, Union argues that refusing a claim for allowances is inconsistent with the terms of the parties' lease. The lease states that "It is understood that in determining the value for royalty purposes . . . a reasonable allowance for the cost of manufacture <u>shall be made</u>, such allowance to be two-thirds of the value of the marketable product unless otherwise determined by the Secretary of the Interior on application of the lessee or on his own initiative." (Emphasis added.) Union argues that this language is mandatory, and restricts the MMS's ability to deny its allowances. The Court disagrees. The language requires the Secretary (through the MMS) to permit an allowance, but it grants the MMS discretion to determine the amount of an allowance that will be permitted. Regulations such as 30 C.F.R. § 206.159 set forth the basis on which the MMS exercises the discretion to calculate appropriate allowance rates. As discussed above, Union failed to comply with the deadlines in that section to provide proof of an appropriate allowance rate. Under these circumstances, it would be fair to say that the MMS granted Union a production allowance, as required by the lease, but because of Union's failure to submit timely supporting proof of the proper amount, the MMS exercised the discretion granted to it to determine that the value of the appropriate allowance was $0.

Accordingly, the Court finds that the MMS did not act arbitrarily or capriciously and that Union's arguments are without merit.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the Defendants' actions were not arbitrary

or capricious, and were otherwise in conformance with the law.  The Court **AFFIRMS** the

MMS's actions in assessing additional royalties against Union.  Declaratory judgment to this

effect shall enter contemporaneously with this Order.

      Dated this 31st day of March, 2009

**BY THE COURT:**

Marcia S. Krieger
United States District Judge